The next case is D'Alessandro v. City of New York. Good morning, your honors. My name is Brian Gardner and I represent appellate Giuseppe D'Alessandro on this 1983 action that was dismissed on the pleadings. This case centers on, predominantly I should say, on former ADA Morris's conduct with regard to my client. And the court below found, what I submit to your honors, that there are three areas that were dismissed on these findings by the court below with regard to absolute immunity. The case was dismissed on the pleadings based on absolute immunity. Could I start with the question of whether it is the ADA's conduct that's the problem here? The ADA's conduct was not turning over the grand jury minutes in a timely way. That was one of the factors, yes, your honor. Oh, okay. There's more. At least with respect to that issue, what undid the conviction was not that you had a right to the grand jury minutes and didn't get it and that's misconduct by the prosecutor. It's that there was a speedy trial violation because the time that you did get the grand jury minutes eventually, but the time that it took to deliver them was not excludable time under the state's speedy trial law and therefore, the indictment should have been dismissed at that stage as a sanction. But that's not misconduct of the ADA. That's an error of law by the judge in not recognizing that there was a speedy trial problem. Well, it's both, I would submit, because yes, but the ADA in that instance in refusing to turn it over in a timely fashion, the district court found that that was not an administrative act, but that was similar to making a Brady determination and therefore, it's okay, and cited some case where we're going to Brady and the discretion . . . But so what in the sense that this is not a case where the failure to turn it over was improper or even in a sense, the delay. If the defendant said, oh, now that I've got them, I'm going to get acquitted, so I'd rather be vindicated, I don't care about the speedy trial, I waive that, there wouldn't have been a problem. The prosecutor didn't commit some kind of offense here or some unethical behavior. What happened was that time should have been counted by the judge in determining the speedy trial issue. But the reason that, if I may, the reason that that speedy trial issue arose and the reason for the state statute in the speedy trial and the constitutional provision for speedy trial is that it is your due process rights to have a speedy trial. When she violated my client's due process rights by refusing to do the administrative act that was ordered by the court, there's no discretion. The court said, give me the transcript. She refused to do that for months on end, keeping the prosecution going. That was a violation of the due process. That was her. That was not the court. The court didn't have those minutes. That was . . . I'm not sure I understand. What is the . . . There's a due process right to get grand jury minutes within some specific time frame? Where does that come from? Well, because the basis for the dismissal originally was that not providing the court the grand jury minutes pursuant to the court's order to do so prevented the court from evaluating the motion to dismiss. Therefore, this case was kept in limbo. The court could not act. My client could not move forward until the minutes were turned over. This was a refusal to turn over those minutes, keeping the prosecution going beyond an appropriate time period. Right. The remedy for that, because that's a violation of state law, is to dismiss the indictment as a speedy trial violation of a state right. Right, but that does not mean that it's not also a violation of due process or a constitutional right to speedy trial. Okay, so what is the citation for where is the due process right to get grand jury minutes within a particular time or even to get a motion adjudicated within a particular time? Right. Well, if I may, I believe that would be a different issue because the motion determination does not immediately impact my client's rights. The act of turning over the minutes and preventing the case from moving forward is a speedy trial violation. It's the same thing as if . . . It's a statutory speedy trial violation. Are you arguing that there was a constitutional speedy trial violation? Oh, sure. There was. The fact that it was a statutory speedy trial right doesn't mean there wasn't also a constitutional speedy trial right. In the state court proceedings, and I was both a local prosecutor and a federal prosecutor, you know, in the state court proceedings, which is much different than the federal, as Your Honors know, a speedy trial violation pursuant to the statute is an automatic dismissal. It's a much easier and more direct case to get dismissed. It doesn't mean that there's not also a constitutional violation on a 1983 case. It just means what was litigated directly there was what was applicable. In her delay in giving those minutes was found to be improper, and if I can, I don't know if I should segue out to the other issue, my first one, which I find fascinating with regard to this assistant, is the grand jury. These are the same minutes that were refused to be turned over in the grand jury proceeding that coincidentally did not have a signed four-person signature on it, that she had offered a . . . and by the way, those grand jury minutes, it's unclear if they were ever turned over because what the assistant did is she re-indicted and superseded the indictment with a new proceeding. What is your allegation about the indictment or the grand jury proceedings? Are you alleging that there was never an indictment returned in court, or are you alleging that the indictment lacked a signature and so was defective and she shouldn't have proceeded on that? Because you seem to be saying both things in your briefing. Right. I actually allege, and I've been chastised by my adversaries previously for this, that the indication to me and the allegation is that there was no indictment returned. I'll lay out the reasons for that, but for purposes of this application on a motion to dismiss, if there was no signature by the four-person on that indictment ever, there was no proper indictment. You're making both arguments. I'm making both. What they needed to do was ask the court . . . it's a very simple procedure. There's an irregularity in the indictment. Ask the court, can I re-indict because there's no actual indictment filed. You need an indictment to have jurisdiction to proceed. If there's no jurisdiction, there's no absolute immunity. This court's decided that over and over again. As to the more . . . where they get mad at me on saying that there was no indictment and ADA Morris proceeded in any event, that's a number of factors. One, that there was no signature on the indictment. We could end there, but there was no signature on the indictment, and ever. They say decades later. This was found out pretty early on in the process. They then claim there's a certificate on the indictment showing something. There's no certificate on the indictment that was filed. It's a handwritten note. When the New York County clerk's office certifies something, they stamp it, they sign it. There's a regularity to that. None of that existed . . . You think the handwritten note is a fabrication? Is that what you're suggesting? I'm not saying it's a fabrication, but I'm saying it doesn't amount to a certification of anything. It's not a legally significant . . . it's a handwritten note. There's no name on it. There's no signature on it. When the clerk's office certifies something, they have a stamp that they use. It's as if I submit a handwritten note, I didn't sign it, and I say, here's my affirmation. It's not legally significant. What I'll throw on top of this is also . . . again, this is a motion to dismiss. Excuse me. This could be a state law violation if the indictment was not properly signed or not properly filed with the court. I get that. But it seems to me that . . . I'm not sure where that would be a violation of due process unless you're alleging that you have a plausible claim that the grand jury never voted, that this was entirely a fraud from the beginning. Is that . . . I do have, of course . . . Well, two things, Your Honor. First, the clerk will go to dismiss just on that basis, saying on the first basis and saying they still have qualified immunity . . . I mean, absolute immunity, because they had the initial right to bring the grand jury presentment, which I agree with, but that doesn't confer forever absolute immunity. What I'm arguing is, one, there's this irregularity that is contrary to what the court stated below, but second, all of the indications, and I should be allowed to proceed in this case rather than having it dismissed on the pleadings, are that there was no initial indictment. Not only was there . . . Not just no valid indictment because the foreman didn't put his signature on it, but there was never such a thing, that this is just a filing by the prosecutor. Absolutely. You know what first red flagged it for me, in addition to not being a signature, nobody could locate this indictment. Not even in the DA's files could they locate an indictment, but then I found two copies of the same purported original indictment, one that was filed with the court without signature and one that was in the attorney's files as produced by the DA's office. Now, as a foreman, that was such a red flag to me. You would never have . . . There can't be a comma difference. There's no . . . And this had actual verbiage difference, and I can tell you that the one that was produced to counsel was more appropriate than the one that was filed with the court, which had some verbiage missing. But it could have been, I don't know, that it was insufficient if it was challenged, but also . . . There's a version of the indictment, of the first one, not the superseding ones, perfect, clean, you know. But the first purported indictment, there's a different indictment from what was filed with the court without signature and a different indictment that was produced to trial counsel. The indictments are different, and it was never . . . And there's no manner in which you can legitimately have two purported original indictments that have a comma difference, and this had sentences different. Same charge, but sentences different. So that is also . . . It can't be. That doesn't seem that puzzling to me if there's a separate draft that's in the prosecutor's file and somebody produces the wrong one, and not the one that was actually ultimately voted on. And this is where, you know, not to make myself a witness, but having been in the grand jury system that . . . You don't produce drafts. It's kicked out by a teletype machine back then, right, because that's when I was there too, a long time ago, right? And there aren't multiple drafts that are ever produced. But again, it's the number of factors that I should be able to allow to go through rather than dismiss on the pleadings. And if I can add to that also, my client was . . . If that indictment, right, the purported original indictment, carried a five-year mandatory minimum, okay, the district attorney's office made an evaluation that probation was an appropriate sentence, non-incarceration. He denied. He said, no, I'm innocent. I'm not accepting that, right? The district attorney then went and superseded the indictment for a fifteen-year mandatory minimum. Again, that was probably the first thing I saw that said, that makes absolutely no sense to me. If you make a determination as a prosecutor that non-incarceration is appropriate and you have a five-year mandatory minimum that the person's facing right now, you would never go through the trouble and difficulty of superseding the indictment for a fifteen-year mandatory minimum. Now, that's just one factor that was the initial red flag that had me delve more deeply. You might be the most vindictive person ever, right, so it's possible. But then, that's the same indictment where she refused to turn over the grand jury minutes to the court to evaluate. It's the same indictment that wasn't signed, right? So, you start having all of these factors, and I say, so I'm pleading it. You're supposed to presume these facts are true, and I'm saying that all of these factors lead to the result, one, there was no formal indictment under the state system, so she had no jurisdiction, and all of the proceedings when there's no jurisdiction are not entitled to absolute immunity. And second, it really looks like a reasonable . . . the standard, I shouldn't say, a reasonable inference that they can be liable, that there was no original indictment. And their response to that was mind-blowing when they said, the response is, well, you know, it wouldn't happen. Nobody would do that. And I say, oh, okay, nobody would do that. Well, stuff happens. There are extreme cases, and by the way, we're talking about an extreme individual here, Brenda Morris, and it's not just me saying she was one of Senator Stevens' prosecutors. She received like the most formal sanction and severe sanction of any prosecutor. But you're also saying it's not plausibly pled. Well, the facts are pled. I will agree it's not the most artful pleading, and it could have been pled, but the facts are in there and pled, and I went back, obviously, in paragraphs 29 and 30, and it does talk about how I make both allegations in the pleading, that one, it was not signed, so there is no valid indictment, and once there's no valid indictment, everything else falls down on absolute immunity purposes, and two, we plead that there actually was no indictment. And again, that was- That there's no signature. And all these other factors, and all these circumstantial factors, based on the fact that this is the same indictment- Are you suggesting that the DA's office knowingly proceeded without a valid indictment, that they knew there wasn't a valid indictment, and they proceeded anyway? I'm suggesting- Wouldn't it have been really easy just to go in and fix that error, if there indeed were an error? Not so easy, because my client testified at the first grand jury presentment, and again, not absolute fact- It just doesn't seem plausible that, assuming there was an error here in the filing of the original indictment, that that could somehow be the basis for some kind of a nefarious plot against your client. Well, either she, and I don't, you know, I'm not the whole DA's office, right, but she either knew it, or was made aware of it at some point, and continued to prosecute, knowing that there was no proper indictment, and not going back to the court to try and get permission to go and represent. Which is, again, why would you ever . . . First, again, in a situation where you're refusing to turn over the grand jury minutes, the indictment's not signed, and you're going back and re-indicting on a 15-year mandatory minimum, when you've already offered probation, why? If you don't know that you have a problem with your original indictment. And I'm saying yes, and this is what's caused a lot of woe back on me, and I don't know at what point, without doing further discovery, but I should be . . . There are enough factors here that, maybe I could have put it better, but the factors are in there, and they're Again, this was not a summary judgment dismissal. This was on the pleadings as alleged, and I am alleging that. And again, it's not . . . I submit to you, Judge Henn, that it's not an appropriate response from the DA's office to say, well, that's too extreme, nobody would do that. And again, we wouldn't have had the Senator Stevens reversal if that was the automatic response. Well, that's too extreme, and it's the same ADA. Okay. Thank you. Good morning, Your Honors. My name is Aaron Bloom, and I represent the City of New York and Detective Vazquez. Your Honors, the appellant was arrested, tried, and convicted for threatening a coworker at the basement. Years later, his conviction, as Your Honors have pointed out, was vacated on narrow state statutory speedy trial grounds because his own counsel, appellate counsel, failed to raise what the court determined was a controlling, recent case law development on the speedy trial grounds. Now, he alleges that he was falsely arrested and that there were various aspects of prosecutorial misconduct that, with regard to the allegations against the city, he claims are the result of a policy of deliberate indifference to the training and supervision of assistant district attorneys in the DA's office with regard to their prosecutorial functions and that the city should be liable for that. Now, none of those claims, though all of those claims were properly dismissed by the district court, and this court should affirm. First, the false arrest claim was time-barred from the outset. The statute of limitations is three years from arrest. This claim was brought about 20 years after the arrest. In terms of whether that was raised, well, in terms of whether that was raised below, it was raised below. The fact that it was mentioned in a footnote has to do with the fact that the pleading itself doesn't say whether the 1983 claim against Detective Vasquez was false arrest or malicious prosecution or some made-up claim, and so, understandably, the city's counsel and Detective Vasquez's counsel below wrote, we think this must be malicious prosecution because there's no way it's a false arrest claim. That's been time-barred decades ago. So it's hard to blame them for doing it that way, for addressing the only claim that could plausibly still be, you know, alive in terms of timeliness. Next, you know, even if it wasn't time-barred, there was clear probable cause to arrest based on the fact that the arrest was based on the complainant's testimony. The victim complained directly to the police officer and said this is what happened. There was no reason to suspect that there was anything. There was a problem with veracity there. Your adversary makes the argument that there was, the police officer failed to take account of the existence of two delivery men who said that they had been in the, I believe it was a basement, correct me if I'm misremembering, and that they said they saw nothing going on in the basement. Well, first of all, with regard, there's no allegation that Detective Vasquez, A, knew about those delivery men, or B, even if he knew about those delivery men, knew that they had anything exculpatory to say. And there's no duty, once a police officer receives a complaint from a victim describing plausibly a crime that happened to him, that the police officer has to go investigate further, chase down all possible leads before having probable cause to arrest. I'd also say even if he had spoken to those two witnesses, as we know from the trial, a jury found beyond a reasonable doubt, after hearing from those very witnesses, that the appellant was guilty. So there's no issue of probable cause. With regard to the Monell claims, the Monell claims fail for two distinct reasons. One, very straightforward, the Supreme Court in Connick specifically said for exactly this type of Monell claim, that there must be a prior pattern of similar violations for there to be notice of, for a deliberate indifference kind of Monell claim, which is what we have here. Otherwise, without such a prior pattern, there's no notice of a need to train on a particular area. So you can't say that the DA's office was, or the DA was deliberately indifferent to such a need. Is it clearly established that the city is responsible for the district attorney? So we're moving to the next, sure, and I'm happy to move to the next argument. I would just say, so I think I agree, it's absolutely clear that this case, the claim fails under Connick, and so we don't even need to reach that question, but I'm happy to address it, which is that it's not, no, it's not clearly established that the city is the municipal policymaker, I mean, sorry, the DA is a policymaker for the city with respect to this. What this case, what this court, I will say that this court did hold that in Walker. So we have, first the court, this court held in Baez, that the district attorney is not a city policymaker when it comes to whether and in what manner to prosecute crimes. Then in Walker, the court said, well, actually, in another case, Gentile, we limited that to a certain, just whether to bring prosecutions, and in Walker, the court, the case involved a failure to train with regard to Brady, and the court in that case said, well, that's an administrative function, so in that case, the DA does serve as a city policymaker, and my argument is that on this point, Walker is no longer good law for primarily because what the Supreme Court did in Vandekamp, which was in Vandekamp, the Supreme Court said prosecutorial immunity applies not just to conduct of the prosecutors, but an allegation of a failure to train or supervise prosecutors, and that even if you characterize that, you could characterize that as administrative, failures to train and supervise with regard to the conduct of prosecutions, how you conduct those things, is inherently and fundamentally, for all the same policy reasons, a prosecutorial function for which prosecutorial immunity applies. Vandekamp was brought, was addressing the DA in his personal capacity, correct? It was not a Monell claim, yes. So does that really, is it clear that Vandekamp would basically abrogate our decision in Walker, which was an official capacity sort of argument? Right, well, I would agree with Your Honor that it is not a direct reversal in the sense that it's not, it's a prosecutorial immunity individual capacity case. But you would say it's abrogated nevertheless. I would say it's abrogated nevertheless because what this, what the Court said in Vandekamp and what this Court has done in Baez and Walker was set up a distinction where there are some things that fall on an administrative side of the line because functionally, they don't implicate the same sort of prosecutorial functions and concerns in terms of independence and judgment and legal knowledge that are required for, that we want to be, that are necessarily part of the prosecutorial function. Both in Vandekamp and in Baez, this is what this Court set up. And Walker said, you know what, we're going to put failure to train on the administrative side of that line. I think Vandekamp says it has to fall on the prosecutorial side of that line. And that, for that reason, we argue that Walker should be overruled and that . . . Thank you, Your Honor. Good morning. Patricia Bailey, Assistant District Attorney on behalf of former District Attorney Robert M. Morgenthau and former Assistant District Attorney Brenda Morris. I'd like to, with the Court's permission, to jump right in with the jurisdictional issue. I would like to . . . Can you elucidate us what happened with regard to this indictment or what the record reflects? So the record reflects, based upon the certification, that, in fact, after the presentation where counsel's client testified before the grand jury, an indictment was voted charging the plaintiff with kidnapping. It was, as required under the CPL, filed by the foreperson of that grand jury with the Supreme Court clerk. The DA, the ADA, does not file an indictment. It is the grand jury foreperson that does that. The foreperson brought it up to the Supreme Court clerk. It was entered into their book, their filing book, according to the certification. And then it apparently made its way into the Supreme Court jacket, the file, the court file for this particular case because the transcript of Plaintiff's arraignment indicates that the clerk had the indictment and arraigned him on the indictment. ADA Morris did not arraign him on the indictment, did not file the indictment in court that date. At the arraignment, the original indictment would be there in court? Correct. The original signed indictment should be in the court. That is the normal practice. With respect to the argument that she refused, ADA Morris refused to disclose the grand jury minutes and they've never seen the light of day, that is completely inconsistent with the transcripts from the criminal trial where the plaintiff's criminal defense attorney actually cross-examined the witness with respect to, the complaining witness, with respect to some of the facts he said regarding being chained up to a pipe or a boiler from that first indictment. So clearly, the case was presented to the grand jury, it looks like it was the 6 p.m. grand jury according to the certification, was filed by the foreperson, it was then put into the Supreme Court jacket for the court clerk to arraign the defendant on. Now, to believe otherwise would have to, or to credit the plaintiff's argument otherwise, which two prior district courts did not, they found it to be wholly speculative, but to credit it, you would have to find that the grand jury foreperson, the grand jury warden who walks him upstairs to the clerk's office, the Supreme Court clerk's office, the clerk that arraigned him that day and the justice that presided over not only the arraignments but going forward over the trial matters, all were in cahoots with ABA Morris to fabricate the existence of an indictment as to plaintiff. It is wholly implausible to make such an argument or a claim. But even if that were the case, which obviously I do not believe, nor do the allegations make up, but even if it were, even if there was no either signed formal indictment or for some reason or another ABA Morris just never took a vote, which is another whole administrative nightmare from the grand jury's point of view, you just can't just not vote a case. But even if that were the case, she would not lose her absolute immunity protections because at a minimum she had a semblance of jurisdiction over the matter. So and counsel has not or the plaintiff has not disagreed with the argument that clearly as an assistant district attorney for the county of New York, she had the authority under the penal law statutes and under the CPL to prosecute the defendant for or the criminal defendant for charges of kidnapping and the other charges that were in the first indictment. And that, that would, it seemed to me pretty clearly be the case if the prosecutor simply overlooked that the grand jury foreperson had not signed where he or she is supposed to sign. The prosecutor doesn't get a copy of the signed indictment, not unless we have to go. That's not the norm. You would have to go to the clerk's office to get a copy of that. So in, in our file, there would not normally be a signed copy of the indictment. Okay. And your response to the argument, now with respect to the argument that it is plausibly pled that the ADA deliberately proceeded without an actual voted indictment, signed or unsigned, your response I take it is that is purely speculative and is not plausibly pled. If it somehow were plausibly pled, would you still say there's absolute immunity in that circumstance? Yes, because again, she had the authority to go forward and to prosecute for the charges that would set forth in the original indictment. That is what she is charged with. It may be gross misconduct. It may be, you would consider it ugly facts, but nevertheless, the purpose of absolute immunity is to protect her from that. And also, just with respect to . . . Could you respond to the argument that, that the production of the grand jury minutes was purely a ministerial act and really wasn't a prosecutorial function? So like many other decisions, both in the Supreme Court and in the circuit, there are, we cited many of them in our briefs, cases like the Warney cases with respect to Brady. So Warney, I think, is particularly instructive on this point because Warney was Brady for the DNA that exculpated, clearly, the defendant of the crime of murder. The issue . . . So the argument is that Brady . . . I understand. . . . has to make a judgment about whether it is Brady and that this is simply . . . I understand. . . . complying with the court's . . . But what Warney goes into the fact is no one disputed the fact that there was no discretion, essentially, that having flat out exculpatory evidence with respect to the criminal defendant and identifying the other perpetrator was clearly Brady. There was, end of story, black and white, that's absolute Brady. And the prosecutor sued there did not dispute that. The dispute in that case was over the delay, the 72-day delay in releasing it. So to hear, there's no dispute that the court required her to release, to produce the grand jury transcript to the court for its in-camera inspection as to the sufficiency of the evidence before the grand jury. The dispute and the claim and the irony is that the delay was what caused the speedy trial violation. And the irony being, had she actually produced them earlier on, Mr. Dale Sanger would still be a convicted felony. The basic argument you're making that this is . . . and why you're relying on that Brady case, that this is just a blatant violation. If there's a clear rule that says you have to give over the grand jury minutes or some other thing that there's clear instruction to the prosecutor on what she's supposed to do and the judge says, do what you're supposed to do in the rule, the failure to do that is just a blatant violation. It doesn't make it an administrative function. It's still the prosecutor failing to comply with our discovery obligations in the course of prosecuting the case. And the same could be said for if a prosecutor violated a Molyneux ruling or a Rosario ruling or a Sandoval ruling. It's a ruling and if you violate it. Now, typically when the court says, orders us to provide the grand jury minutes, they don't say by next Tuesday or by, you know, you're given a reasonable amount of time. And clearly because there were so many other motions pending on this case before the court, she was awaiting the decision on the enjoinment motion by counsel not to represent. Be that as it may, it violated the statutory 3030. What was her explanation for not, or was there ever an explanation given for the delay in producing the? They were not in the papers. I know my office argued on appellate levels multiple times that it was because the defendant, the criminal defendant, contributed to the delay by having these multiple motions before that the time should be excludable. There was also argument that the defendant, the criminal defendant, had consented to different periods. But ultimately, the court of appeals and the first department both said, look, this is a threshold decision, again going to whether or not it relates to the handling of a criminal matter. This is a threshold issue. We need to decide first and foremost whether the prosecution can even go forward. Thank you. Well, I'd like to just point out that there are a number of factual allegations made by counsel during that presentation. And again, we're here on a motion to dismiss on the pleadings. The Brady question, every court that's addressed it has said, you know, these Brady determinations, Rosario, Giglio, whatever you want to take, has an aspect of discretion to it. What the court below found was the simple turning over of the minutes pursuant to an order, the act of handing them up when you've been directed to act . . . Is that preparation for trial? Excuse me, I'm sorry. Is that preparation for trial, that is turning over grand jury minutes? No, it's already happened. It's simply relevant to the court's evaluation of what happened at the grand jury proceeding. But it's not the DA's preparation for trial. This is . . . Well, it's perhaps defense counsel's preparation for trial. I mean, it's part of the efforts to get ready for trial, including producing relevant materials. Well, defense counsel doesn't get the grand jury minutes. Okay. I mean, it's submitted to the judge. The judge looks at it and decides . . . I mean, isn't it all part of the prosecution of the case, the preparations for trial, the carrying on of the case? It's part of the carrying on of the case from the court, but it's not part of the carrying on of the case from the prosecutor. The question presented, Your Honor, is that whether or not she had absolute immunity for  any time a prosecutor violates an order from the judge, you call that administrative because there's a clear directive and the prosecutor didn't do it, and so there would not be absolute immunity. Only with regard to something as simple as handing up a pen or a transcript or something that's blatant and doesn't involve discretion. If the court is directing how I conduct my prosecution or what I should do during the prosecution, then no, I would argue you can push back in terms of how you're prosecuting a case, but in terms of counsel, hand me that pen, there's no difference from hand me the pen to hand me the transcript and let me look at it. If this is an administrative . . . The only reason for that question, the objection has been sustained and the prosecutor asked the question, and later there's an argument, perfectly good argument on appeal, that this was prosecutorial misconduct, and for some reason, the conviction is affirmed anyway, the guy spends a lot of time in jail and eventually he gets the opportunity, he gets released and he gets the opportunity to file a lawsuit, there's no immunity there because there was no discretion. The judge just told him, do not ask that question, he asked that question. I would respectfully disagree in the sense that I would agree with him that there's discretion on that because the court told you not to do it, but you're engaged in a trial and you're going to highlight for the jury this issue again, even though it might put you into sanction or some other . . . If the act of handing up a transcript to the court is not some sort of administrative non-discretionary act, then as soon as the prosecution starts, everything has to be enveloped. It would be a rule that envelops everything, and this court has never gone that far, which is why all the cases that they need to cite to involve some discretion, some Brady issue, something of that nature. If the act of handing up a transcript to your Honor is not administrative, I don't know what would be once the prosecution started. I agree that when a lawyer is engaged, as Judge Shin points out, in preparing for trial, there are a lot of things that have to get done, and some of them slipped through the cracks, and some of them are things that were supposed to have been done, and they're clearly supposed to have been done. There's an order to do it, and it just didn't get done. It didn't get done in a timely way, which is really what's at stake here, because once again, the issue is not a violation of some right that the defendant had to have this transcript, either for the defendant or for the judge or for anybody. It's that there was a speedy trial violation. The right not giving the transcript created a situation of a speedy trial violation, and again, this is not just one appearance where they didn't give it. Again, the point is, who violated his speedy trial rights? The judge violated his speedy trial rights by not dismissing the indictment. His own lawyer, as was the basis for the reversal, was ineffective in not noticing the speedy trial violation and making a motion, or his appellate lawyer, whichever it was, who didn't do that. This is not a prosecutorial abuse. It is, so then let them off the hook for all violations of Constitution. Every constitutional violation that's not dismissed by the court, that they create in a non-qualified . . . . . . If they buried the exculpatory DNA results, the court has nothing to do with that, but if there is a . . . it's not the prosecutor's obligation in a constitutional sense to make the judge aware that there is a speedy trial issue. No, but it's their constitutional obligation to allow the case to proceed in a speedy trial nature, in a speedy trial way. If they hide the DNA evidence, it's the court . . . you could say, well, the court could have dismissed it on that, but the judge didn't, so really when the judge didn't dismiss it, it cleanses their violation. They still have this violation that impacted my . . . even if it was only six months, the violation is there that impacted my client's right to have this due process, to have this case proceed in an ordinary manner. When they didn't do that, by . . . you'll decide, but by the administrative act of handing up a piece of paper, a number of pieces of paper, that was administrative. I don't know if you have . . . I just want to talk about . . . counsel talks about some factual issues in terms of the conviction and what it was. The appellate division that overturned the conviction also made some comments about the seemingly potential insufficiency of the evidence at trial. The appellate division itself reversed its prior decisions as to the weight of the evidence on that aspect. On Walker, just really quickly, this court has not found that Walker was overturned by Vandekamp. The district courts in this circuit have continued to apply Walker after Vandekamp. We think Walker, we submit to you, is still good law, but until you say otherwise. Thank you. Thank you both. Well argued on both sides. That's the last case on the calendar, so I'll ask the clerk to adjourn the court. The court is adjourned.